Thomas R. Califano, Esq.
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
thomas.califano@dlapiper.com

*Counsel to the Liquidating Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Orion HealthCorp, Inc. | : | Case No. 18-71748 (AST) |
| Constellation Healthcare Technologies, Inc. | : | Case No. 18-71749 (AST) |
| NEMS Acquisition, LLC | : | Case No. 18-71750 (AST) |
| Northeast Medical Solutions, LLC | : | Case No. 18-71751 (AST) |
| NEMS West Virginia, LLC | : | Case No. 18-71752 (AST) |
| Physicians Practice Plus, LLC | : | Case No. 18-71753 (AST) |
| Physicians Practice Plus Holdings, LLC | : | Case No. 18-71754 (AST) |
| Medical Billing Services, Inc. | : | Case No. 18-71755 (AST) |
| Rand Medical Billing, Inc. | : | Case No. 18-71756 (AST) |
| RMI Physician Services Corporation | : | Case No. 18-71757 (AST) |
| Western Skies Practice Management, Inc. | : | Case No. 18-71758 (AST) |
| Integrated Physician Solutions, Inc. | : | Case No. 18-71759 (AST) |
| NYNM Acquisition, LLC | : | Case No. 18-71760 (AST) |
| NorthStar FHA, LLC | : | Case No. 18-71761 (AST) |
| NorthStar First Health, LLC | : | Case No. 18-71762 (AST) |
| Vachette Business Services, LTD. | : | Case No. 18-71763 (AST) |
| MDRX Medical Billing, LLC | : | Case No. 18-71764 (AST) |
| Vega Medical Professionals, LLC | : | Case No. 18-71765 (AST) |
| Allegiance Consulting Associates, LLC | : | Case No. 18-71766 (AST) |
| Allegiance Billing & Consulting, LLC | : | Case No. 18-71767 (AST) |
| Phoenix Health, LLC | : | Case No. 18-71789 (AST) |
| New York Network Management, L.L.C. | : | Case No. 18-74545 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------- x

| | |
|---|---|
| HOWARD M. EHRENBERG, | : Adv. Pro. No. 20-08053 (AST) |
| CHAPTER 11 LIQUIDATING TRUSTEE, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| SAGE GROUP CONSULTING, INC., AND SALIL SHARMA, | : |
| | : |
| Defendants. | : |

-----------------------------------------------------------------------x


**THE LIQUIDATING TRUSTEE'S MEMORANDUM IN**
**<u>OPPOSITION TO DEFENDANT SALIL SHARMA'S MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Preliminary Statement.................................................................................................... 1

Argument ....................................................................................................................... 3

    I.      THE COMPLAINT ADEQUATELY ALLEGES FRAUD ........................... 4

      A.  The Allegations Of Fraud Against Sharma Are Sufficiently Specific............................ 5

      B.  Fraud Is Adequately Alleged With Respect To The Go-Private Transaction ................. 8

      C.  Fraudulent Intent Is Adequately Pleaded With Respect To The Cause Of Action For Intentional Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A). ................................. 9

    II.     SHARMA WAS PROPERLY SERVED WITH THE SUMMONS AND COMPLAINT ......................................................................................................... 10

    III.    THIS COURT HAS PERSONAL JURISDICTION OVER SHARMA ....................... 11

    IV.    VENUE IN THIS COURT IS PROPER UNDER 28 U.S.C. § 1409(A), AND THERE IS NO BASIS FOR TRANSFER ...................................................................................... 13

    V.     THE COMPLAINT WAS FILED WITHIN THE TIME PERIODS PROVIDED BY 11 U.S.C. §§ 546 AND 548(a)...................................................................................... 14

    VI.    RULE 11 IS INAPPLICABLE TO THE COMPLAINT................................................. 15

    VII.   SHARMA IS NOT ENTITLED TO ANY LITIGATION COSTS .............................. 16

Conclusion .................................................................................................................. 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allou Distribs., Inc.*,
  2012 WL 6012149 (Bankr. E.D.N.Y. Dec. 3, 2012) ................................................................12

*Allstate Ins. Co. v. Bogoraz*,
  818 F. Supp. 2d 544 (E.D.N.Y. 2011) .......................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................3

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).......................................................................................................3

*In re Choez*,
  2017 WL 5604109 (Bankr. E.D.N.Y. Nov. 20, 2017).............................................................11

*In re Collins*,
  540 B.R. 54 (Bankr. E.D.N.Y. 2015).....................................................................................5, 8

*In re Enron Corp.*,
  328 B.R. 58 (Bankr. S.D.N.Y. 2005).........................................................................................5

*Erickson v. Pardus*,
  551 U.S. 89 (2007).....................................................................................................................3

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985).....................................................................................................4

*Hadges v. Yonkers Racing Corp.*,
  48 F.3d 1320 (2d Cir. 1995).....................................................................................................15

*In re Hechinger Inv. Co. of Delaware, Inc.*,
  287 B.R. 620 (Bankr. D. Del. 2002) .......................................................................................11

*In re Hellas Telecommunications (Luxembourg) II SCA*,
  547 B.R. 80 (Bankr. S.D.N.Y. 2016).......................................................................................12

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).......................................................................................................9

*In re Khan*,
  No. 10-46901-ESS, 2014 WL 4956676 (Bankr. E.D.N.Y. Sept. 30, 2014) ............................12

*In re Manhattan Investment Fund Ltd.*,
 310 B.R. ..............................................................................................................9, 10

*In re Manville Forest Prods. Corp.*,
 896 F.2d 1384 (2d Cir. 1990) ...........................................................................13, 14

*Miller v. Polow*,
 14 A.D.3d 368 (1st Dep't 2005) ..............................................................................15

*MRC Industries, Inc. v. Global Therapy Systems, LLC*,
 2009 WL 2461106 (E.D.N.Y. Aug. 7, 2009) ............................................................1

*Novak v. Parts Authority, LLC*,
 2020 WL 4034897 (E.D.N.Y. July 16, 2020) .........................................................13

*In re Orion HealthCorp., Inc.*,
 Case No. 18-71748 (Bankr. E.D.N.Y. March 16, 2018) ........................................14

*Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n*,
 109 F. Supp. 3d 587 (S.D.N.Y. 2015) ...................................................................8, 9

*Stern v. Marshall*,
 131 S. Ct. 2594 (2011) ............................................................................................12

*Sussman v. Bank of Israel*,
 56 F.3d 450 (2d Cir. 1995) ......................................................................................16

*In re Tribune Co.*,
 418 B.R. 116 (Bankr. D. Del. 2009) .......................................................................12

*Villager Pond, Inc. v. Town of Darien*,
 56 F.3d 375 (2d Cir. 1995) ........................................................................................3

**Statutes**

11 U.S.C. § 301(b) ............................................................................................................14

11 U.S.C. §§ 544 and 548 .................................................................................................14

11 U.S.C. §§ 546 AND 548(a) ..........................................................................................14

11 U.S.C. § 546(a) .............................................................................................................14

11 U.S.C. § 546(a)(1)(A) ...................................................................................................14

11 U.S.C. § 548 ..................................................................................................................15

11 U.S.C. § 548(a) .............................................................................................................15

iii

11 U.S.C. § 548(a)(1)(A) ........................................................................................4, 9

28 U.S.C. § 1334..............................................................................................11, 12

28 U.S.C. § 1409(a) ................................................................................................13

28 U.S.C. § 1409(a), AND.......................................................................................13

28 U.S.C. § 1412.....................................................................................................13

Debtor and Creditor Law § 276 ..............................................................................15

New York's Debtor and Creditor Law......................................................................15

**Other Authorities**

Fifth Amendment ....................................................................................................12

Bankruptcy Rule 7004 ............................................................................................11

Bankruptcy Rule 7004(b)(1) ...................................................................................10

Civil Rule 4 ............................................................................................................11

Fed. R. Bankr. P. 7003 ............................................................................................14

Fed. R. Civ. P. 9(b) ..........................................................................................4, 5, 8

Fed. R. Civ. P. 11(c)(2)...........................................................................................15

Federal Rules of Civil Procedure Rule 3 .................................................................14

Rule 11 ..........................................................................................................3, 15, 16

Rule 12(b)(2)...........................................................................................................11

Rule 12(b)(3)...........................................................................................................13

Rule 12(b)(5)....................................................................................................10, 11

Rule 12(b)(6)............................................................................................................4

Howard M. Ehrenberg, the duly appointed liquidating trustee (the "Liquidating Trustee") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through his undersigned counsel, submits this memorandum of law in opposition to the motion to dismiss filed by Defendant Salil Sharma ("Sharma") on July 17, 2020 (the "Motion").[1]

## PRELIMINARY STATEMENT

This adversary proceeding concerns the theft of more than $300 million from the debtors in the Chapter 11 Cases (the "Debtors") and their creditors by the Debtors' former managers Parmjit Parmar, Sotirios Zaharis, and Ravi Chivukula (collectively, "Former Management"). Former Management stole this money with the assistance of Sharma, who is Parmar's brother-in-law, and Sharma's company, SGC.

As described in greater detail in the Complaint and in other documents filed with the Court, Former Management schemed to divert money out of Debtor CHT, the parent company of each of the other Debtors.  Former Management did so through numerous transactions that followed the same general pattern: (1) CHT raised funds through secondary equity offerings on the London Stock Exchange's Alternative Investments Market, ostensibly for the acquisition of another company; (2) the acquisition target was either newly created by Former Management or otherwise had little to no value; (3) using fabricated business records, Former Management created the public impression that the acquisition target was relatively valuable; (4) as a result of Former

---

[1]     While Sharma nominally moves only on behalf of himself, he also asks the Court to apply his arguments to Defendant Sage Group Consulting, Inc. ("SGC").  Motion, p. 2.  The Court should not do so.  SGC has not filed its own motion, and as a corporation it cannot appear in these proceedings without counsel.  *See, e.g., MRC Industries, Inc. v. Global Therapy Systems, LLC*, 2009 WL 2461106, *1-2 (E.D.N.Y. Aug. 7, 2009) (recognizing that corporate defendants cannot appear *pro se* and entering default judgment against corporate defendant where defendant failed to retain counsel).  Accordingly, Sharma's motion provides no basis for this Court to take any action with respect to the Liquidating Trustee's claims against SGC.

Management's fraudulent misrepresentation of the value of the acquisition target, CHT was able to raise "acquisition" funds that greatly exceeded what the target was worth; and (5) Former Management used the funds raised to enrich themselves, often in the form of real estate and other luxury purchases.  In connection with this scheme, the Justice Department eventually charged Former Management with securities fraud and filed civil forfeiture complaints against them; the Securities and Exchange Commission filed a complaint against them; and they were indicted by a grand jury.

Defendants Sharma and SGC played three key roles in Former Management's scheme, which could not have been consummated without Defendants' assistance.  First, Defendants created many of the false business records—including fake due diligence reports and fake websites—that were used to inflate the perceived value of CHT's acquisition targets.  Second, Sharma helped to launder the funds received by CHT for its acquisitions so that those funds could be used by Former Management to buy real estate for themselves.  Third, Defendants created the appearance that the companies acquired by CHT were legitimate businesses with income streams, so that the scheme could continue and so that CHT's value would be inflated when it was ultimately sold.  In return for this assistance, Sharma and SGC were paid substantial fees by and received other compensation from Former Management.  As detailed in the Complaint, Sharma and SGC's unlawful acts support claims for aiding and abetting Former Management's fraud, breach of fiduciary duty, and conversion; fraudulent misrepresentation; negligent misrepresentation; unjust enrichment; and fraudulent transfer.

Sharma now moves to dismiss the Complaint as against him, submitting to the Court a jumble of misconceived procedural arguments, improper factual assertions, and baseless accusations against the Liquidating Trustee.  In cursory fashion, Sharma claims that (1) the

Complaint does not adequately allege his participation in Former Management's scheme; (2) the Complaint was not properly served on him;  (3) this Court lacks personal jurisdiction over him; (4) venue in this Court is improper; (5) the causes of action for fraudulent transfer are untimely; and (6) the Complaint was filed for an improper purpose, warranting dismissal under Rule 11.

There is no merit to any of Sharma's arguments.  The Complaint alleges in detail Sharma's participation in each aspect of Former Management's scheme.  Sharma was properly served with the Complaint, and his bare denial of this fact is insufficient to overcome the presumption created by the Liquidating Trustee's affidavit of service.   Because Sharma was properly served, and because this Court has subject-matter jurisdiction over this adversary proceeding, the Court has personal jurisdiction over Sharma.   Venue is proper in this Court because this is where the underlying bankruptcy case is pending.  The fraudulent-conveyance actions in the Complaint were timely filed.  And, as a matter of law, Sharma is not entitled to relief under Rule 11.  Accordingly, the Court should deny Sharma's motion in its entirety.

## <u>ARGUMENT</u>

When deciding a motion to dismiss, courts must accept all well-pleaded factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  In addition, courts must "construe[] the complaint liberally" and "draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).  To survive a motion to dismiss, a complaint need only set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted).  As a result, the question before this Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (citation omitted).

3

## I.    THE COMPLAINT ADEQUATELY ALLEGES FRAUD

Sharma moves pursuant to Rule 12(b)(6)[2] to dismiss the fraud-related causes of action in the Complaint, arguing that (1) the allegations against him are not sufficiently specific, Motion, p. 6; (2) the allegations about CHT's sale do not adequately allege that the transaction was fraudulent, *id.*, pp. 6-7; and (3) fraudulent intent is not adequately alleged in connection with Count VIII, for intentional fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).  *Id.*, pp. 9-12.[3]  These arguments fail.

"Pursuant to New York law, a claim of fraud must allege five elements: (1) a material misrepresentation; (2) made by a defendant knowing that it was false when made; (3) with the intent to defraud; (4) upon which plaintiff reasonably relies; and (5) which causes plaintiff injury." *Allstate Ins. Co. v. Bogoraz*, 818 F. Supp. 2d 544, 550 (E.D.N.Y. 2011) (citing *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir.2001)). In actions involving fraud, "the circumstances constituting fraud … shall be stated with particularity." Fed. R. Civ. P. 9(b).   However, "great specificity [is] not required with respect to the allegations of knowledge and scienter…." *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir. 1985).

As discussed below, the Complaint adequately alleges each of the required elements such that "[t]here can be no doubt that the Complaint gives each defendant notice of precisely what he

---

[2]       Unless otherwise noted, references to the "Rules" are to the Federal Rules of Civil Procedure.  The Federal Rules of Bankruptcy Procedure are referred to as the "Bankruptcy Rules."

[3]       Other than Count VIII, for intentional fraudulent transfer under 11 U.S.C. § 548(a)(1)(A), Sharma does not specifically allege any cause of action to be inadequately pleaded.  Presumably, when arguing that the Complaint does not adequately allege fraud, he is referring to Counts I (aiding and abetting fraud), IV (fraudulent misrepresentation and omission), V (negligent misrepresentation), VI (conspiracy to commit fraud), IX (constructive fraudulent transfer), and X-XIII (avoidance of fraudulent conveyances).  This brief responds only to the narrow arguments Sharma makes in respect of these claims.

is charged with. No more is required by Rule 9(b)." *Id.* (citing *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir.1978)).

## A.    The Allegations Of Fraud Against Sharma Are Sufficiently Specific

Sharma first argues that Rule 9(b) requires allegations of fraud to be pleaded with particularity and that the Complaint contains no specific allegations about him, as opposed to Parmar.  Motion, p. 6.  The pleading requirements of Rule 9(b), however, are relaxed in fraud actions brought by a bankruptcy trustee.  *In re Collins*, 540 B.R. 54, 65 (Bankr. E.D.N.Y. 2015) ("Courts often apply a more relaxed standard to the particularity requirement when a trustee in bankruptcy alleges actual fraud.") (collecting cases); *In re Enron Corp.*, 328 B.R. 58, 73 (Bankr. S.D.N.Y. 2005) ("Courts take a liberal approach when reviewing allegations of fraud pled by a trustee because, as an outside party to the transactions in issue, the trustee must plead the claim of fraud for the benefit of the estate and its creditors based upon second-hand knowledge.") (internal citations omitted).

In any event, the Complaint satisfies the requirements of Rule 9(b) regardless of whether those requirements are relaxed.  The Complaint describes in detail Sharma's knowledge of and participation in Former Management's fraudulent scheme and in doing so, adequately alleges all of the required elements of fraud as to Sharma.  In particular, the Complaint contains detailed allegations of Sharma's role in Former Management's fraudulent misrepresentation of the value of CHT's acquisition targets:

*The NorthStar Transaction*.  The Complaint alleges that in June 2015 Former Management created a shell company called NorthStar to be an acquisition target for CHT, and that Sharma then bought an existing company called Vachette on behalf of NorthStar in order to conceal the fact that NorthStar was not an independent business.  Compl. ¶¶ 66, 68-70.  Sharma also personally

5

developed a fake website for NorthStar and a fake diligence report for the company in September 2015, in order to cause CHT's board to believe that NorthStar would be a valuable acquisition. *Id.* ¶¶ 71, 74, 76. Moreover, the federal tax identification number for NorthStar was sent to Sharma's attention at SGC's offices, demonstrating that it was not an independent company and that it was controlled at least in part by Sharma. *Id.* ¶ 77. The consequence of Sharma's actions was that CHT bought NorthStar for an inflated value of $18 million, $15 million more than the value of its only asset, Vachette. *Id.* ¶¶ 72, 78. Former Management paid Sharma significant fees for Sharma's assistance with this transaction. *Id.* ¶ 80.

*The Phoenix Transaction*. Like the NorthStar Transaction, the Phoenix Transaction involved Former Management's creation of a new shell company to use as an acquisition target. Compl. ¶ 81. The Complaint alleges that Sharma and SGC helped Former Management to fabricate reports for the company to make it seem legitimate by plagiarizing operating and financial information of an unrelated company that was being marketed for sale at the time. *Id.* ¶ 87. As a result, Former Management was able to divert $10.5 million from CHT. *Id.* Again, Sharma was paid significant fees for his assistance. *Id.* ¶ 89. Indeed, email correspondence dated March 18, 2016 between Sam Zaharis and Sharma—along with other contemporaneous documents—indicate that Sharma received over $10 million for his part in the Phoenix Transaction. *Id.* ¶¶ 115-117. That money appears to have gone towards the purchase of expensive real estate in Manhattan. Id. ¶¶ 118-119.

*The MDRX Transaction*. MDRX was another shell company created by Former Management as an acquisition target. Compl. ¶ 96. The Complaint alleges that in the fall of 2015, before MDRX was incorporated, Sharma used confidential financial information from an existing company to create a false due diligence report for MDRX. *Id.* ¶¶ 91-92, 94. As with the NorthStar

and Phoenix Transactions, Sharma also created a fake website for MDRX to induce investment for an "acquisition" by CHT.  *Id.* ¶ 93.  Former Management then created records suggesting that MDRX bought another company called Apex for $35 million, but that transaction did not actually close and the money was diverted to Former Management.  *Id.* ¶¶ 99, 102.  Again, Sharma was paid significant fees for his assistance.  *Id.* ¶ 101.

*The Vega Transaction*.  SGC is alleged to have prepared a fraudulent due diligence report for Vega, a company whose assets were less than $5 million but which CHT purchased for $24 million relying on the numbers provided in Defendants' reports.  Compl. ¶¶ 104, 106-111.  Sharma was paid for his and SGC's work on this transaction.  *Id.* ¶ 109.  Furthermore, Sharma assisted in illicitly moving money out of CHT by funneling it through a company which he owned and controlled; Ranga Bhoomi.  *Id.* ¶¶ 167-171.  That money was used to purchase a $15 million apartment in Manhattan.  *Id.* ¶ 172.  Sharma was listed as the grantee on the unit deed and real property transfer report.  *Id.* ¶ 174.

*The Go-Private Transaction*.  Sharma and SGC assisted Former Management in creating the illusion that the low-value or valueless subsidiaries acquired by CHT were actually functioning businesses so as to increase the consideration paid in the Go-Private Transaction.  Compl. ¶¶ 136-149.  Sharma's assistance included forging an invoice on March 17, 2016.  *Id.* ¶¶ 145-146.  As with the other transactions, Sharma and SGC were paid significant fees for their assistance.  *Id.* ¶ 152.

These allegations refute Sharma's blanket, one-line assertion that the Complaint "makes no [specific] allegations against me at all."  Motion, p. 6.  The Complaint is replete with detailed descriptions of Sharma's role in various fraudulent transactions, including when Sharma's work for Former Management was performed.  These allegations are more than sufficient to withstand

a motion to dismiss.  As required by Rule 9(b), they put Sharma "on sufficient notice of the alleged fraudulent conduct to be able to answer and defend the allegations." *In re Collins*, 540 B.R. at 65.

### B.    Fraud Is Adequately Alleged With Respect To The Go-Private Transaction

Sharma argues that the Complaint fails to adequately plead that the Go-Private Transaction was fraudulent because there is no allegation that the valuation of CHT in the transaction was any higher than CHT's actual value.  Motion, p. 6.  Sharma is incorrect.  In the very paragraph he cites, the Complaint alleges that CHT was valued at a 45% premium to its stock price. Compl. ¶ 51. Moreover, the Complaint expressly alleges that this valuation was based upon falsified information.  *Id.* ¶¶ 49-50.

Sharma suggests that in order to adequately plead fraud as to the Go-Private Transaction, the Liquidating Trustee is required to allege that CHT's "total enterprise value" at the time of the Transaction was lower than the valuation by the investors involved in the Transaction.  Motion, pp. 6-7.  Sharma goes on to argue that, as a matter of fact, that valuation accurately reflected CHT's total enterprise value.  Motion, p. 7.  These arguments are misplaced.  The Liquidating Trustee is not required to prove his claims in order to defeat a motion to dismiss.  *Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 601 (S.D.N.Y. 2015) (denying motion to dismiss and recognizing that whereas "at trial or summary judgment, plaintiffs must prove their claims . . . .[,] at the pleading stage, plausibility will suffice").  Nor is it appropriate for Sharma, in a motion to dismiss, to submit factual assertions regarding the value of CHT at the time of the Go-Private Transaction.  *See In re Collins*, 540 B.R. at 60 (rejecting "challenges to the adequacy of the Complaint [that] principally consist of denials of key factual allegations . . . . [because] factual arguments are insufficient to support a motion to dismiss") (collecting cases).

In short, and contrary to Sharma's assertions, the Complaint plausibly alleges that CHT was overvalued in the Go-Private Transaction in part because of specific fraudulent acts by Sharma, and that this wrongdoing improperly benefited Former Management.  These allegations are sufficient to withstand a motion to dismiss.  *Royal Park Investments*, 109 F. Supp. 3d at 601.

### C.    Fraudulent Intent Is Adequately Pleaded With Respect To The Cause Of Action For Intentional Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A).

Sharma argues that the Complaint fails to adequately plead fraudulent intent in connection with Count VIII for intentional fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).  Motion, pp. 9-10.  According to Sharma, the allegations of his involvement in Former Management's scheme are all conclusory or made on information and belief, and there is no evidence that any transfers were made from CHT to him.  Motion, pp. 10-11.  Again, these arguments depend on mischaracterizations of the Complaint and on factual assertions that are improper at this stage of the proceedings (in addition to being unsupported in any event).

In fact, the Complaint adequately alleges fraudulent intent.  When pleading fraud, conditions of a person's mind—such as malice, intent, or knowledge—may be alleged generally.  *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).  Moreover, "[g]iven the difficulties in establishing a transferor's actual intent, courts often look at the totality of the circumstances as well as the badges of fraud surrounding the transfers."  *In re Manhattan Investment Fund Ltd.*, 310 B.R. at 505–06 (citing *MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Services, Co.*, 910 F.Supp. 913 (S.D.N.Y.1995)).  "Accordingly, courts look for (1) a close relationship among the parties to the transaction; (2) a secret and hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of any other creditor's claims and the

9

debtor's inability to pay them; (5) use of dummies or fictitious parties; and (6) retention of control by the transferor after the conveyance." *Id.* at 505 n.3.

The Complaint alleges nearly all of the badges of fraud identified in *Manhattan Investment Fund*: (1) Sharma is Parmar's brother-in-law, and many of the companies purchased by CHT were owned or controlled by Sharma and/or Parmar; (2) transfers regularly took place days or weeks after underlying transactions; (3) the Debtors routinely paid inflated prices for little or nothing in return; (5) numerous dummies or fictitious parties were involved in the transactions, including Sharma's pseudonym, Bobby Kumar, which he used in the NorthStar Transaction; and (6) the Phoenix Transaction purported to exchange certain assets of SGC, but in reality, no transfer of assets took place. Thus, the "totality of the circumstances" alleged in the Complaint strongly supports an inference of fraudulent intent. *In re Manhattan Investment Fund Ltd.*, 310 B.R. at 505–06.

## II. SHARMA WAS PROPERLY SERVED WITH THE SUMMONS AND COMPLAINT

Sharma admits that he received and read the copy of the Complaint served on SGC, but he moves to dismiss under Rule 12(b)(5) because he allegedly did not receive the Summons and Complaint in his "personal capacity." Motion, pp. 2-3. Sharma's attempt to elevate form over substance fails because he was, in fact, served in his personal capacity.

Bankruptcy Rule 7004(b)(1) provides for service upon natural persons "by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." That procedure was followed here. On March 17, 2020, counsel for the Liquidating Trustee mailed the Summons and Complaint via UPS overnight delivery to Sharma at Sharma's home and at SGC's office, where

Sharma regularly conducted business. Counsel for the Liquidating Trustee then duly filed an affidavit of service attesting to this fact. *See* Certificate of Service by Thomas R. Califano dated April 16, 2020 [D.I. 5].

The affidavit of service constitutes *prima facie* evidence of proper service. *In re Choez*, 2017 WL 5604109, *12 (Bankr. E.D.N.Y. Nov. 20, 2017) ("[A] properly filed affidavit of service by a plaintiff is *prima facie* evidence that service was properly effected.") (internal citations omitted). In response, Sharma has not disputed either the business address or the home address listed on the affidavit of service. He has merely asserted—in his unsigned motion papers—that he has not received the Complaint in his personal capacity. That assertion is insufficient to overcome the presumption that service was valid. *In re Hechinger Inv. Co. of Delaware, Inc.*, 287 B.R. 620, 623 (Bankr. D. Del. 2002) ("The Defendants' mere denial of service, unsupported by affidavit or other evidence, falls short of what is required to overcome Plaintiff's *prima facie* evidence that service of process was accomplished.") (internal citations omitted). Accordingly, Sharma's motion to dismiss under Rule 12(b)(5) should be denied.

## III.   THIS COURT HAS PERSONAL JURISDICTION OVER SHARMA

Sharma purports to move to dismiss the Complaint under Rule 12(b)(2), for lack of personal jurisdiction. Motion, pp. 2, 13. He does not explain why he believes personal jurisdiction is lacking, but in all events it is clear that this Court can exercise personal jurisdiction over him.

Under Bankruptcy Rule 7004, "a court has personal jurisdiction over a defendant if three requirements are met: (1) service of process has been made in accordance with Bankruptcy Rule 7004 or Civil Rule 4; (2) the court has subject matter jurisdiction under [28 U.S.C. § 1334]; and (3) exercise of jurisdiction is consistent with the Constitution and the laws of the United States."

*In re Tribune Co.*, 418 B.R. 116, 121 (Bankr. D. Del. 2009) (internal citations omitted).  Each of these conditions is satisfied here.

As explained above, Sharma was properly served with the Complaint.  In addition, this Court has subject matter jurisdiction in accordance with 28 U.S.C. §1334 because the action arises under the Chapter 11 Cases.  *See In re Allou Distribs., Inc.*, 2012 WL 6012149, at *6 (Bankr. E.D.N.Y. Dec. 3, 2012) (recognizing that federal courts have subject matter jurisdiction over cases arising in, arising under, or relating to cases under the Bankruptcy Code). Finally, jurisdiction over Sharma is consistent with Constitutional due process because Sharma—who acknowledges that a court in New Jersey would have jurisdiction over him, Motion, pp. 2-3—has sufficient minimum contacts with the United States.  *See In re Hellas Telecommunications (Luxembourg) II SCA*, 547 B.R. 80, 96–97 (Bankr. S.D.N.Y. 2016) (recognizing that in a bankruptcy case, "minimum contacts with the United States is sufficient to satisfy the Fifth Amendment due process requirement, whether the claims asserted arise under federal, state or foreign law.") (internal citations omitted).

Sharma also incorrectly suggests that this Court lacks jurisdiction under *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  Motion, pp. 2-3.  In *Stern*, the Supreme Court held that a bankruptcy court lacked Constitutional authority to enter a final judgment resolving a counterclaim for tortious interference.  The Court did not hold that the bankruptcy court lacked jurisdiction to hear the claim in the first place.  Where a bankruptcy court does not have Constitutional authority to enter a final judgment, the court may "'hear [the] proceeding,' and then 'submit proposed findings of fact and conclusions of law to the district court.'"  *In re Khan*, No. 10-46901-ESS, 2014 WL 4956676, at *5 (Bankr. E.D.N.Y. Sept. 30, 2014) (internal citations omitted).  To the extent this Court lacks Constitutional authority to enter a final judgment with respect to any claim in this proceeding, it may submit proposed findings of fact and conclusions of law to the district court.

12

## IV.   VENUE IN THIS COURT IS PROPER UNDER 28 U.S.C. § 1409(a), AND THERE IS NO BASIS FOR TRANSFER

Sharma moves to dismiss for improper venue under Rule 12(b)(3), arguing that he has no connection with New York.  Motion, p. 5.  Even if true, that unsupported statement is irrelevant. Under 28 U.S.C. § 1409(a), proceedings "arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  *See Novak v. Parts Authority, LLC*, 2020 WL 4034897, (E.D.N.Y. July 16, 2020) ("Courts generally agree that section 1409(a) sets forth the rule that venue for [bankrupty-related] proceedings is proper in the 'home court' where the bankruptcy petition is filed . . . .") (citation omitted).  As Sharma acknowledges, this adversary proceeding was commenced in relation to the Chapter 11 Cases, all of which are pending in this Court.  Motion, p. 4.  Accordingly, venue in the Eastern District of New York is also proper for this proceeding.

Sharma argues in the alternative that the case should be transferred to the District of New Jersey, Motion, p. 5, but he provides no reason why that would be appropriate.  Because the Chapter 11 Cases are pending before this Court this Court is presumptively the court that should adjudicate this proceeding.  *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) ("[T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy.").

To overcome the presumption that venue is proper in this Court, Sharma must prove by a preponderance of the evidence that transfer is warranted under 28 U.S.C. § 1412, which provides for transfer "in the interest of justice or for the convenience of the parties."  *Manville*, 896 F.2d at 1390.  A transfer is in the "interest of justice" where it would "promote the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness."  *Id.* at 1391.  When deciding

whether transfer is appropriate, courts can weigh the "interest of justice" against the "convenience of the parties." *Id.* Here, any marginal convenience Sharma might gain by transferring the case from New York to New Jersey would be outweighed by the loss in efficiency in transferring this case to a court that is unfamiliar with the Chapter 11 Cases. Again, however, Sharma has not even attempted to establish that a transfer is appropriate. The Court should therefore deny his request.

## V.    THE COMPLAINT WAS FILED WITHIN THE TIME PERIODS PROVIDED BY 11 U.S.C. §§ 546 AND 548(a)

Sharma asserts that the Complaint was filed outside the time limitations provided by 11 U.S.C. §§ 546 and 548(a) for the avoidance of fraudulent transfers under the Bankruptcy Code, *i.e.*, Counts VIII through XIII of the Complaint. Motion, pp. 2-3. Sharma is wrong.

First, 11 U.S.C. § 546(a)(1)(A) provides that in pending bankruptcy cases, proceedings under 11 U.S.C. §§ 544 and 548 (for the avoidance of fraudulent transfers) may be "commenced" within "2 years after the entry of the order for relief." In the case underlying this proceeding, the order for relief is the voluntary petition. 11 U.S.C. § 301(b). That petition was filed on March 16, 2018. *See In re Orion HealthCorp., Inc.*, Case No. 18-71748 (Bankr. E.D.N.Y. March 16, 2018), D.I. 1. This adversary proceeding was commenced on the date the Complaint was filed. *See* Fed. R. Bankr. P. 7003 (providing that Rule 3 of the Federal Rules of Civil Procedure applies to Bankruptcy proceedings); Fed. R. Civ. P. 3 (providing an action is commenced by filing a complaint). As Sharma acknowledges, the Complaint was filed on March 16, 2020, two years after the filing of the voluntary petition. D.I. 1, Motion, p. 3. Counts VIII through XIII are therefore timely under 11 U.S.C. § 546(a).[4]

---

[4]    Sharma's only argument to the contrary is to say that the deadline for this action was actually March 13, 2020, because that date was allegedly "two calendar years (730 days) from Bankruptcy filing." (*sic*). Motion, p. 3. That assertion is doubly wrong. First, 730 days from March 16, 2018 (the date

14

Second, 11 U.S.C. § 548(a) provides for the avoidance of fraudulent transfers "made or incurred on or within 2 years before the date of the filing of the petition."  Again, the petition in the underlying action was filed on March 16, 2018, which means that fraudulent transfers "made or incurred" on or after March 16, 2016 are actionable under Section 548(a).  The fraudulent transfers alleged in the Complaint are the "consulting" fees paid to Sharma and Sage for their assistance with Former Management's scheme.  Compl. ¶¶ 232, 238.  These payments are expressly alleged to have been made within two years before the filing of the petition.  *Id.* ¶¶ 235, 241.  The Liquidating Trustee's causes of action under 11 U.S.C. § 548 are therefore timely.[5]

## VI.    RULE 11 IS INAPPLICABLE TO THE COMPLAINT

Alleging that this case was "brought for an improper purpose," Sharma asks the Court to dismiss the Complaint under Rule 11 of the Federal Rules of Civil Procedure.  Motion, at 2, 7-8.  Sharma's request is frivolous.  As an initial matter, motions under Rule 11 must be filed separately from other motions and must be served on the opposing party 21 days before being filed with the Court.  *See* Fed. R. Civ. P. 11(c)(2).  Sharma has not complied with either of these requirements.  For this reason alone, the Court should deny Sharma's request.  *See Hadges v. Yonkers Racing*

---

the voluntary petition was filed) was March 15, 2020.  Second, "two calendar years" from March 16, 2018 is 731 days and not 730 days, because in 2020 February was 29 days long.

[5]    Sharma suggests that the causes of action under Section 548 are somehow untimely because the Complaint references certain transactions that occurred before March 16, 2016.  Motion, pp. 3-4.  But it is irrelevant that Former Management's and the Sage Defendants' wrongdoing might have begun before that time.  What matters is when the fraudulent transfers—the payments to the Sage Defendants—occurred.  Moreover, if any of the fraudulent transfers does not fall within the two-year look-back period provided by 11 U.S.C. § 548, the transfer would nevertheless be actionable under New York's Debtor and Creditor Law (Counts X through XIII), which is subject to a six-year look-back period.  *See Miller v. Polow*, 14 A.D.3d 368, 368 (1st Dep't 2005) ("An action for actual fraudulent conveyance under Debtor and Creditor Law § 276 must, like other actions based on fraud, be commenced within six years from the date of the fraud.").

*Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) (reversing award of Rule 11 sanctions where requesting party had failed to serve motion 21 days in advance).

Aside from these fatal procedural defects, Sharma's allegations of improper motive are unaccompanied by any evidence.  Sharma did not even bother to sign the motion papers in which his allegations appear.  *See* Motion, p. 14.  His unverified, unsubstantiated assertions cannot support a finding that this proceeding is somehow illegitimate.  And even if Sharma's baseless accusations were taken as true (and in fact they are untrue), he would not be entitled to relief under Rule 11.  A finding that a complaint was filed for improper reasons, without more, does not support Rule 11 sanctions.  *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) ("[A] determination of improper purpose must be supported by a determination of frivolousness when a complaint is at issue.") (internal quotation omitted).  Sharma has not attempted to show that the allegations in the Complaint are frivolous, and he could not make that showing in any event.  Rather it is Sharma's Rule 11 claim itself that is frivolous—through perhaps not surprising in light of his having abetted a $300 million fraud.

## VII.    SHARMA IS NOT ENTITLED TO ANY LITIGATION COSTS

At the end of his Motion, Sharma includes a one-paragraph request—which he styles as a "counterclaim"—for "costs for this action and attorney's fees for defending this action."  Motion, p. 12.  Sharma provides no legal support for this request, and there is none.  Moreover, there are no "attorney's fees" to award in the first place: Sharma is acting *pro se* and acknowledges that he has not retained counsel.  Motion, p. 2.  In short, Sharma has admittedly incurred no fees in connection with this action, and even if he had incurred fees he would not be entitled to recover them.  Sharma's request is baseless and should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Sharma's Motion in its entirety, including his "counterclaim" for costs.

Dated:    August 14, 2020              Respectfully submitted,
             New York, New York

**DLA PIPER LLP (US)**

  /s/  Thomas R. Califano
Thomas R. Califano (6144)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com

*Counsel to the Liquidating Trustee*

17